UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re:<br><br>JAMES R. LATHROP<br><br>        DEBTOR<br><br>ANTHONY S. NOVAK, TRUSTEE<br><br>        PLAINTIFF,<br><br>VS.<br><br>SACK DISTRIBUTORS CORP.,<br>STEPHEN H. SACK, ALLARDS OIL<br>HEAT AND GAS SERVICES, LLC,<br>BRUCE ALLARD, INDEPENDENT<br>HEATING SERVICES, LLC, AND<br>KATHLEEN LATHROP<br><br>        DEFENDANTS | CASE NO. 07-20652 (ASD)<br><br>CHAPTER 7<br><br>ADV. PRO. NO. 07-2079<br><br>RE: DOC. I.D. NO. 67 |

APPEARANCES:

Vincent T. McManus, Jr., Esq.
116 South Main Street, Wallingford, CT 06492
Counsel for Plaintiff-Trustee

Eric H. Rothauser, Esq.
BoneeWeintraub LLC, 29 South Main Street, Suite 330, West Hartford, CT 06107
Counsel for Defendants Sack Distributors Corp. and Stephen H. Sack

**MEMORANDUM OF DECISION
ON MOTION FOR SUMMARY JUDGMENT**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

## I. INTRODUCTION

In this adversary proceeding Anthony S. Novak, the chapter 7 Trustee and Plaintiff (hereafter, the "Trustee") , through his counsel, is presently prosecuting an Amended Complaint against several defendants including Sack Distributors Corp. and Stephen H. Sack (together, the "Movants"). The Movants have filed a motion seeking summary judgment as to the four counts in the Amended Complaint applicable to them. On the record as a whole, and for the reasons explained hereafter, the motion is granted in part and denied in part.

## II. PROCEDURAL BACKGROUND

On May 18, 2007, James R. Lathrop (hereafter, the "Debtor"), commenced this bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code. In Schedule D (Secured Creditors), the Debtor listed Sack Distributors Corp.(hereafter, "SDC"), as a creditor holding a claim secured by a mortgage on the Debtor's residence, located a t 329 Sam Green Road, Coventry, Connecticut (hereafter, the "Residence").

The Trustee, on November 13, 2007, commenced the captioned adversary proceeding by filing a three-count complaint (hereafter, the "Complaint"), Doc. I.D. No. 1, naming the Movants and others as defendants. The Complaint generally, *inter alia*, seeks to recover certain assets alleged to be property of the bankruptcy estate, and to declare certain liens against real property as void. See Adversary Proceeding Cover Sheet (hereafter, the "Cover Sheet"). While the Cover Sheet indicates 11 U.S.C. §§ 542, 548 and "other" as statutory foundations for the requested relief, the Complaint itself is barren of any statutory references, and the relief requested therein is well beyond relief provided in Sections 542 and 548. The Complaint was subsequently amended (hereafter, the

"Amended Complaint"), Doc. I.D. No. 46, by the addition of Count Four, captioned "Fraud", and Count Five, captioned "Intentional Interference with Contractual Relations".[1]

Following the filing of the Amended Complaint, the Movants filed a <u>Motion for Summary Judgment</u> (hereafter, the "Motion"),[2] Doc. I.D. No. 67, requesting:

> summary judgment in its favor in the above-captioned case. The Defendant Sack Distributors Corp. is not a secondary mortgage lender under Conn. Gen. Stat., § 36a-510(9) (2006) and § 36a-511 (2006) because the subject mortgage is not a consumer loan; hence, it is not a secondary mortgage loan as defined in Conn. Gen. Stat., § 36a-510(10) (2006). Further, there is no evidence to support the elements of a cause of action sounding in fraud or tortious interference with business relations.

The Motion was accompanied by, *inter alia*, a <u>Local Rule 56(a)1 Statement</u> (hereafter, the "Rule 56(a)1 Statement"), an <u>Affidavit [and Continuation of Affidavit] of Stephen H. Sack</u>, a <u>Memorandum of Law in Support of . . . Motion for Summary Judgment</u> (hereafter, the "Memorandum in Support"). The Trustee, who had earlier filed an <u>. . . Objection to Motion for Summary Judgment</u> (hereafter, the "Objection"), Doc. I.D. No. 55, and a <u>Local Rule 56()(2) Statement . . .</u> (hereafter, the "Rule 56(a)2 Statement") in response to the Movant's first motion for summary judgment, <u>see</u> fn 2, filed no further response.

---

[1] Counts One through Three in the Amended Complaint appear to be identical to Counts One through Three in the Complaint.

[2] The Motion amended a prior, then-pending <u>Motion for Summary Judgment</u>, Doc. I.D. No. 42, which had been based upon the Complaint.

### III. JURISDICTION

*A.     General Jurisdiction*

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b). The First, Second and Third Counts of the amended complaint in the captioned proceeding are "core" proceedings pursuant to 28 U.S.C. §§157 (b)(2)(E), (H), and (K), which this Court has the authority to hear and determine on reference from the District Court pursuant to 28 U.S.C. §§157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984.

*A.     Lack of Present Jurisdiction Concerning Counts Four and Five*

In the Fourth Count, the Trustee alleges that the Movants fraudulently induced the parties to enter into an agreement; and In the Fifth Count, the Trustee asserts a claim against the Movants for tortious interference with a contract. The Fourth and Fifth Counts of the Amended Complaint are not "core" proceedings but are "related to a case under title 11" which this Court may hear pursuant to 28 U.S.C. §157(c)(1). As the parties have thus far not indicated whether they consent, pursuant to 28 U.S.C. §157(c)(2), to this Court's entry of final orders or judgment, the Court, at the present time, lacks jurisdiction to enter a judgment, including summary judgment, thereon.

Accordingly, the Motion will be denied as to the Fourth and Fifth Counts.

### IV. SUMMARY JUDGMENT PROCEEDINGS

*A.     Summary Judgment Standards*

Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment shall enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When ruling on motions for summary judgment "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court in deciding a summary judgment motion "'cannot try issues of fact, but can only determine whether there are issues of fact to be tried.'" R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir.1984) (quoting Empire Electronics Co. v. United States, 311 F.2d 175, 179 (2d Cir. 1962)). The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn, and all ambiguities resolved in favor of the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In reviewing a summary judgment motion, we must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir.2003).

B.   *Local Rule 56(a)*

Local Rule 56(a) of the Local Civil Rules of the United States District Court for the District of Connecticut (heretofore and hereafter, "Local Rule(s)") supplements Fed. R. Civ. P. 56(c) by requiring statements of material fact from each party to a summary judgment

5

motion.[3] Under Local Rule 56(a)1, the material facts set forth in a movant's statement "will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party . . . . "

The purpose of Local Rule 56(a) is to aid the Court in the efficient disposition of motions for summary judgment, and thereby conserve valuable judicial resources. Ordinarily, in determining whether there are material facts in genuine issue, this Court looks first to the parties' Local Rule 56(a) Statements.  Unfortunately, a comparison of those Statements has produced, for the purposes of this contested matter, nothing of value in terms of a body of uncontested facts as all but one fact alleged in the Rule 56(a)1

---

[3] Local Rule 56(a), entitled "Motions for Summary Judgment", applicable to this proceeding by D. Conn. LBR 1001-1(b), states in pertinent part as follows:

> 1. There shall be annexed to a motion for summary judgment a document entitled "Local Rule 56(a)1 Statement", which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2.
>
> 2. The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied. The Local Rule 56(a)2 Statement must also include in a separate section entitled "Disputed Issues of Material Fact" a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.
>
> 3. Each statement of a material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e). Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion.

\* \* \* \*

Statement is denied or disputed in the Rule 56(a)2 Statement.[4]  In this proceeding, by virtue of there being only one fact directly "admitted" in the Rule 56(a)(2 Statement, in combination with the nature of the supporting affidavits, memoranda and documents, has significantly deprived the Court of the intended benefit of Local Rule 56(a).

.          **V.  FINDINGS OF MATERIAL FACT NOT IN GENUINE ISSUE**

The Court has reviewed the Motion, Objection, Amended Complaint, the Rule 56(a) Statements as to Counts One through Three, the uncontroverted Rule 56(a)(1) Statement as to Counts Four and Five, the Memorandum in Support, other Memoranda, Affidavits, Exhibits, and the files and records of the captioned bankruptcy case and the  adversary proceeding. Based upon that review the Court, resolving any ambiguities in favor of the nonmovant Trustee, finds the following facts not to be in genuine issue and makes the following enumerated findings of fact for purposes of the present Motion only.

1..       The Debtor was engaged in the retail heating oil business.  Prior to October 7, 2004, he did business as a sole proprietorship under the trade name "Independent Services"; thereafter, the business was operated by a limited liability company,  Independent Heating Services, LLC, owned and operated by the Debtor.

2.       SDC is a wholesale distributor of home heating oil.  On December 16, 2003, while he was operating the business as a sole proprietorship, the Debtor, in his individual capacity, executed a document ("hereafter, the Guaranty") personally guaranteeing all obligations and indebtedness due to SDC by "the Customer." (Objection, Exh. A.) The

---

[4]The one fact directly admitted – that SDC "is a Connecticut Corporation located in Hartford, Connecticut, and is a wholesale distributor of home heating oil and other petroleum products", Rule 56(a)1 & 2 Statements, ¶ 1, provides no material value in resolving the Motion. And because the Court presently lacks jurisdiction to address Counts Four and Five, facts related to those Counts "deemed admitted" as uncontroverted by the Trustee's failure to supplement the Rule 56(a)2 Statement, are also of no value.

Guaranty names as the "customer" the Debtor d/b/a "Independent Services."

3.      The Debtor and Kathleen Lathrop ("hereafter, Kathleen") (together,"the Lathrops") and SDC, on January 12, 2006, executed a "Line of Credit and Security Agreement" (hereafter, the "Agreement") under which SDC agreed to extend to "Borrower" a "commercial line of credit," secured by a mortgage on the Debtor's residence located at 329 Sam Green Road, Coventry, Connecticut ("hereafter, the Residence").  In the Agreement, "Borrower" was indicated as "James Lathrop, Kathleen A. Lathrop, Independent Services, INC."  The document was signed on behalf of SDC by Stephen H. Sack and by the Lathrops, in their individual capacities, as "Borrower."  To secure the line of credit, the Agreement stated that it granted SDC a security interest in the form of a mortgage on the Residence, and a first priority security interest in all of the Borrower's present and after-acquired inventory, vehicles, machinery, equipment, furniture and fixtures.

4.      On January 12, 2006, the Lathrops also executed a mortgage document ("hereafter, the Mortgage"), recorded on January 24, 2006 on the Coventry Land Records at Vol 979, Page 213, granting SDC a mortgage on the Residence. (Objection, Exh. F.)  The parties do not dispute that, at the time the Mortgage was executed, the Residence was encumbered by a pre-existing first mortgage. The Mortgage, in which the Lathrops are "referred to collectively as Mortgagor," states, in relevant part:

> This instrument is given to secure payment and performance of all obligations of Mortgagor under a Guaranty Agreement dated January 16, 2003, a copy of which guaranty agreement is attached hereto and made a part hereof as <u>Schedule B</u> (the "guaranty").  The guaranty guarantees the payment and performance of all obligations under a Line of Credit and Security Agreement ("Agreement") dated January 12, 2006 executed by James Lathrop d/b/a Independent Services ("Borrower") up to a total principal amount of $250,000, a copy

of which is attached thereto and made a part thereof as <u>Exhibit A</u>, and any and all amounts, liabilities or obligations which may be owed by Borrower to Mortgagee.

5. In December, 2006, Independent Heating Services, LLC agreed to sell its assets, including its customer list, to Allards Oil Heat and Gas Services, LLC ("Allards").

6. The Asset Purchase Agreement was modified on December 29, 2006 by a document entitled "Tri-Party Agreement" (Complaint, Exh. A), executed by Independent Heating Services, LLC, Allards and SDC. Under the Tri-Party Agreement, in return for the assets of Independent Heating Services, LLC, Allards, *inter alia*, was to make payments of fifteen cents for each gallon of oil sold to a customer on Independent Heating Services, LLC's customer list for a period of thirty-six months. Of that fifteen cents, ten cents would be paid to SDC and five cents would be paid to Independent Heating Services, LLC.[5] To date, Allards has made no payments to either SDC or Independent Heating Services LLC pursuant to the Tri-Party Agreement.

## VI. DISCUSSION

*First Count - Turnover of Property of Estate*

In the First Count, the Trustee seeks a turnover of payments to be made by Allards Oil Heat and Gas Services, LLC (Allards) pursuant to the "Tri-Party Agreement" and damages, attorney's fees and costs related thereto. At issue in the First Count, *inter alia*, is whether Allards' payments to SDC pursuant to the terms of the Tri-Party Agreement are property of the bankruptcy estate. The Trustee argues that SDC did not have a perfected security interest in Independent's assets and is therefore not entitled to receive payments

---

[5] The gist of the Fourth and Fifth Counts of the amended complaint is the Trustee's claim that, because the Agreement and the financing statement (Form UCC-1) filed by SDC misidentified Independent as either a proprietorship or corporation, SDC did not have a perfected security interest in Independent's assets and is therefore not entitled to receive payments under the Tri-Party Agreement. For reasons indicated, *supra* Part II, such claims are not presently before the Court.

under the Tri-Party Agreement. Because Stephen H. Sack, in his individual capacity, was not a party to the Tri-Party Agreement, and asserts no claim to the payments to be made thereunder, the First Count cannot be sustained as to him. Accordingly, Defendant Stephen H. Sack is entitled to judgement as a matter of law on the First Count.

As to Defendant SDC, the Trustee argues that, SDC did not have a perfected security interest in Independent's assets and is therefore not entitled to receive payments under the Tri-Party Agreement. The Movants contend that the terms of the Tri-Party Agreement, providing for certain payments to be made from Allards to SDC, are valid and enforceable. Because resolution of the underlying issues depends upon disputed facts to be resolved in a trial on the merits, summary judgment is denied as to SDC on the First Count.

*Second Count  -  Validity of Mortgage*

In the Second Count, the Trustee seeks, *inter alia*, a determination that SDC is not licensed as a secondary mortgage lender, and that a mortgage given by the Lathrops to SDC to secure payment of obligations pursuant to a line of credit and personal guaranty is therefore void and unenforceable. More specifically, the Trustee, in the Second Count of the Amended Complaint, avers:

> 21.   At the time of extending said mortgage, the defendant Sack Distributors Corp. . . . had neglected and failed to obtain the necessary licenses to issue such mortgages from the Banking Department of the State of Connecticut as required by C.G.S. Section 36a-511.[6]
>
> 22.   Pursuant to the substantive law of the State of Connecticut including

---

[6] All references herein to Title 36a of the Connecticut General Statutes refer to the provisions of such statutes which were in effect as of January 12, 2006, the date the Mortgage was executed. The referenced statutes have since been repealed and the subject matter thereof is presently addressed at Conn. Gen. Stat. §§36a-485 and 486.

10

C.G.S. Section 36a-511 and the decision of the Supreme Court of the state of Connecticut in the matter of <u>Solomon v. Gilmore</u>, [2]48 Conn. 769 [(1999)] and <u>Westville & Hamden Loan Co. v. Pasqual, Et Al.</u>, 109 Conn. 110 [(1929)], second mortgages issued by an unlicensed lender in violation of C.G.S. Section 36a-511 are unenforceable and void.

SDC acknowledges that it is not licensed as a "secondary mortgage lender," but contends, in the Motion, that:

> The Defendant Sack Distributors Corp. is not a secondary mortgage lender under C.G.S. §36a-510(9) and §36a-511 in that the subject mortgage is not a secondary mortgage loan as defined in C.G.S. §510(10), therefore the second mortgage identified in the Complaint is valid and enforceable.

Simply stated, SDC argues that the mortgage is not void because SDC is not required to be licensed as a secondary mortgage lender; that the Mortgage was given to secure a commercial line of credit and is excluded from the statutory definition of a "secondary mortgage loan" which must be executed by a licensed "secondary mortgage lender."

The validity of the Mortgage is determined in accordance with applicable state law. <u>See</u> <u>Butner v. United States</u>, 440 U.S. 48, 55, 99 S.Ct. 914, 918 (1979) ("Property interests are created and defined by state law. . . . The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in . . . mortgaged property."). The following are the relevant provisions of the applicable Connecticut statutes in effect as of the date of the Mortgage: Conn. Gen. Stat. §36a-510 (2006) provides, in relevant part:

> As used in sections 36a-510 to 36a-524, inclusive, unless the context otherwise requires:
> ***
> (9) "Secondary mortgage lender" means a person engaged in the business of making secondary mortgage loans: (A) In such person's own name utilizing such person's own funds, or (B) by funding loans through a table funding agreement;
>
> (10) "Secondary mortgage loan" means (A) a loan or an extension of credit, including, but not limited to, an extension of credit pursuant to a contract or

11

> an assigned contract for the sale of goods or services, made to a person, *the proceeds of which are to be used primarily for personal, family or household purposes*, and which is secured in whole or in part by a mortgage upon any interest in one-to-four-family residential owner-occupied real property located in this state, provided such real property is subject to one or more prior mortgages, and (B) the renewal or refinancing of any existing loan or extension of credit described in subparagraph (A) of this subdivision;

(Emphasis added).

Conn. Gen. Stat. §36a-511 states, in part:

> (a) No person shall engage in the business of making secondary mortgage loans or act as a secondary mortgage broker unless such person has first obtained the required license under sections 36a-510 to 36a-524, inclusive.

The Connecticut Supreme Court, in Solomon v. Gilmore, 248 Conn. 769, 774 (1999), noting that the legislative intent behind the licensing requirement of §36a-511 was to protect *consumers*, held that such "public policy concerns [were] . . . sufficient to warrant the determination that mortgages taken by lenders in violation of [§36a-511] are unenforceable.

The Line of Credit states, in eight of its ten numbered paragraphs, that it is a "commercial line of credit" and states prominently:

> BORROWER ACKNOWLEDGES AND REPRESENTS THAT THE LINE OF CREDIT EVIDENCED BY THIS AGREEMENT IS A COMMERCIAL TRANSACTION AND THAT THE PROCEEDS OF THE LINE OF CREDIT SHALL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

(Obj. Exh. D ¶2.) Similarly, the Guaranty states:

> GUARANTOR(S) DECLARE(S) THAT SAID TRANSACTION IS A "COMMERCIAL TRANSACTION" ... AND IS NOT A CONSUMER TRANSACTION. BUYERS AND/OR GUARANTORS REPRESENT AND WARRANT THAT THE PROCEEDS OF THIS TRANSACTION ARE NOT BEING USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

(Obj. Exh. A ¶9.)

Fed. R. Civ. P. 56(e)(2) requires that:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.

The Trustee submitted a copy of a statement of account (Obj. Exh. G) detailing, for the period from July 18, 2006 to December 1, 2006, the dates and charges for over 100 wholesale deliveries of heating oil sold to the Debtor and/or "Independent Services" and the balances due under the line of credit as of each such date. The statement indicated that the Debtor made wholesale oil purchases for such period of time totaling $202,429.23.

The Trustee notes that the Debtor made no payments on account during that time and argues that "[t]hese records show that the credit extension was not used by the debtor James Lathrop to pay for materials purchased by its commercial entity but was rather diverted by him to his own personal household use from 2005 to the date of his bankruptcy."[7] The undisputed evidence indicates that the Debtor and/or his wholly owned company received only wholesale deliveries of heating oil (and related services) from SDC. Because the Trustee has failed to provide any evidence from which a reasonable finder of fact could conclude that the Debtor and his family personally used such a large quantity of

---

[7] To the extent that the Trustee is arguing that the line of credit and guaranty were consumer transactions because the Debtor diverted to his personal use a portion of the cash flow from Independent Heating Services, LLC's retail sales of oil to its customers, such argument is unavailing. The funds alleged to have been so diverted are the proceeds from Independent Heating Services, LLC's operation of its retail oil business, not the proceeds from the line of credit and guaranty secured by the Mortgage. That the revenues of Independent Heating Services, LLC may have provided funds which the Debtor subsequently used for his personal, family or household purposes does not transform the nature of the credit extended by SDC from commercial inventory financing to a consumer credit transaction. Such an expansion of the definition of a secondary mortgage loan is inconsistent with both the plain language and the *consumer*-protection purpose of the secondary mortgage statutes. See Solomon v. Gilmore, 248 Conn. at 774, 776 ("[T]he secondary mortgage act is a remedial statute that is intended to protect the consumer).

13

heating oil over such a brief period of time,[8] the Court concludes that there is no genuine issue of material fact and that the Movants are entitled to judgment on the Second Count as a matter of law.

## VII. CONCLUSION

In accordance with the forgoing discussion, the Motion is **GRANTED** *in part* and **DENIED** *in part* as follows:

1)  On the First Count of the Amended Complaint, the Motion is GRANTED as to Stephen H. Sack , and DENIED as to SDC;

2)  On the Second Count of the Amended Complaint, the Motion is GRANTED as to both Movants;

3.  On the Fourth and Fifth Counts of the Amended Complaint, the Motion is DENIED as to both Movants.

A separate Order shall enter in accordance herewith.

Dated: April 15, 2009                                                BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge

---

[8] A dispute concerning a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A motion for summary judgment may not be defeated by the "mere existence of a scintilla of evidence in support of the plaintiff's position; there must be evidence on which the [finder of fact] could reasonably find for the plaintiff." Id.. at 252. "[T]his standard mirrors the standard for a directed verdict . . . which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id. at 250.